**DE LOS ANGELES MELON v. ENTIDAD PROVINCIA RELIGIOSA DE PADRES MERCEDARIOS DE CASTILLA.**

**DE LOS ANGELES MELON et al. v. CONGREGACION DE LOS RELIGIOSOS DE NUESTRA SENORA DE LA MERCED et al.**

Clv. Nos. 4721, 4727.

United States District Court
D. Puerto Rico, San Juan Division.

April 26, 1950.

Walter L. Newsom, Jr., San Juan, Puerto Rico, Jose O. Sabater, San Juan, Puerto Rico for plaintiffs.

Charles R. Hartzell, San Juan, Puerto Rico, for defendants.

CHAVEZ, District Judge.

This cause is now before the Court on a motion for reconsideration. The Court in an extensive memorandum had denied defendant's motion to dismiss. Defendant contends that the Court erred in denying the motion to dismiss which was predicated on the theory that this action, seeking to annul and set aside a conveyance of properties to defendant, was prescribed by article 1253 of the Civil Code of Puerto Rico, as more than four years have run from the date of the consummation of the contract. It is contended that the contract, granting that it was obtained by fraud and deceit, was, under the Civil Law, voidable, but not inexistent; and that a voidable, but existent contract must be impeached before the expiration of the four years provided in Article 1253.

The complaint in this action is studded with the words "fraudulently represented" (to plaintiff's deceased aunt) "fraudulent statement" "practiced said deceit" "with the intent and purpose to cheat" all of which are comprised in the term of art "dolus"—which also, with certain limitations, includes the common law concept of "undue influence"—and, there is no doubt that, under the Civil Law of Spain, *this action, if it were bottomed on dolus,* would be barred by Article 1253. See Josefa Rivera v. Succession of Ignacio Diaz Luzunaris decided by the Supreme Court of Puerto Rico, July 5, 1949. (Advance Sheet No. 9799). The proposition is so firmly established that there is no point in enlarging upon it.

But let us not fail to see the tree for the forest of semantics. Whether doña Pantaleona Melon gave her consent by reason of the alleged fraud and deceit, or for any other reason, the fact, alleged by the complaint, and admitted for the purposes of the motion to dismiss, is that *she*

*gave that consent, not to a conveyance, but to an instrument for the administration of said properties;* to put it another way, she did not consent to the conveyance which is impeached in this suit. For a similar situation see Vazquez v. Zeda, 58 PRR 597, where a husband represented to his wife that the deed was a power of attorney in fact, whereas it was a conveyance. It was held that she had not given her express consent. If this were the only phase of the case, the motion for reconsideration would have to be denied, as the complaint sufficiently alleges inexistence of the contract for want of consent and Article 1253 does not apply.

## II. The Sacramental Will.

We now come to the novel aspect of this case. Plaintiff, if she be vested with a cause of action, enjoys that status under the purported will of her aunt Pantaleona Melon, said will being a Sacramental Testament executed under a privilege granted to residents of Barcelona by Pedro II in the year 1283 and recognized by the Supreme Court of Spain in its Judgment of March 18, 1864, No. 82, 9 Jurisprudencia Civil 222. This interesting document, which is before the Court, was executed with all the formalities required by the law of Spain. It recites that on July 8, 1937, the aunt of the party promoting the execution of the testament (plaintiff herein) died at 1:30 a. m. at the age of 88, as a result of cerebral hemiplagia; that two days before, while ill in bed suffering from hemiplegia of the left side, she sent for a notary; but, fearing that her dissolution was imminent, she declared, before two competent witnesses, her last will; that she had said the same to two other persons who had just left her bedside, but who could not be used as witnesses, as they were not present with her and the second set of witnesses; that later word was sent to the notary that he need not come as she was in articulo mortis; that it was impossible to present the testament (after decedent's will had been reduced to writing, as explained hereinafter) because "one was able to stay alive only by a miracle" during the Red dominion in Barcelona.

Citing the privilege granted residents of Barcelona by Pedro II, the testament continues its recital and states that after public notice, two women were cited as witnesses to decedent's last will; that on the day appointed, the proceedings were postponed, as women are not competent witnesses to a will; that three days later, two male witnesses who heard decedent express her last will were produced; that at the appointed day and hour, the Judge, the Fiscal, the Clerk and the two witnesses proceeded to the Altar of the Holy Cross at the Church of Saints Justo and Pastor, where six candles and the Holy Gospel were placed on the Consecrated Stone. The priest administered the oath to the witnesses, who placed their hand on the Holy Gospel. They then testified that doña Pantaleona had, conscious of her imminent death, stated as her will that her niece Angela Melón y Melón (plaintiff) was by her designated her only and universal heir.

The above ceremony was reduced to writing in the document entitled "Protocolization of Sacramental Testament" now before the Court.

The will apparently complies with the requisites of the sacramental will as recognized by the Supreme Court of Spain, supra. The question now is, what is the effect of this will in Puerto Rico?

In Colon v. Registrar, 22 PRR 344, the Registrar refused to record a cancellation of mortgage by the attorney in fact of a Spanish Tutor who had failed to obtain the authorization of the local District Court. The attorney in fact had been duly authorize to cancel the mortgage by the family council in Spain. The tutor and pupils (wards) resided in Spain and the real estate was situate in Aguadilla, Puerto Rico. The Court held that the American rule of lex rei sitæ was in force in Puerto Rico and that it was necessary to obtain authorization of the Insular District Court in order to cancel the mortgage.

The leading case involving wills in Puerto Rico is Pastor Gomila v. Miró Pastor, 34 PRR 50. In that case a holographic will was executed and probated in Palma, Spain, devising real estate located in Puerto Rico. Even though the Civil Code of Puerto Rico

provides for holographic wills, the Court held that the will executed by decedent and probated in the Court in Spain could have no force or effect in Puerto Rico where the real property was situated. This case, which presents the same situation as the case at bar, has not been overruled by the Supreme Court of Puerto Rico.

 Under the authority of Gomila v. Pastor, supra, which establishes the rule in connection with the validity of foreign wills in Puerto Rico, the Court must hold that the sacramental will upon which plaintiff's status as such plaintiff with a cause of action depends, is of no force and effect in Puerto Rico; consequently, the complaint must be dismissed.